# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:10-CV-355-RJC-DCK

| | |
|---|---|
| RICHARD A. CAPELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| NC DIVISION OF VOCATIONAL ) | |
| REHABILITATION SERVICES, PAMELA ) | |
| LLOYD-OGOKE, M. TERRY HODGES, ) | |
| CHARLOTTE-MECKLENBURG HOSPITAL ) | |
| AUTHORITY d/b/a CAROLINAS MEDICAL ) | |
| CENTER, CINDY BOBAY, CHARLOTTE ) | |
| MECKLENBURG POLICE DEPARTMENT, ) | |
| and KEITH A. SMITH, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant City Of Charlotte, Charlotte-Mecklenburg Police Department's Motion To Dismiss" (Document No. 41); Defendants Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Medical Center and Cindy Bobay's "Motion To Dismiss" (Document No. 42); and the "Motion To Dismiss As To NC Department Of Health And Human Services, M. Terry Hodges, NC Division Of Vocational Rehabilitation, Pamela Lloyde-Ogoke, NC DOJ, Kathy J. Thomas, And Roy Cooper" (Document No. 43). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for review. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motions to dismiss be granted.

# I. BACKGROUND

*Pro se* Plaintiff Richard A. Capell ("Plaintiff") originally filed his "Complaint" (Document No. 1) in this action on August 3, 2010. Plaintiff then filed an "Amended Complaint" (Document No. 10) on September 21, 2010. Plaintiff later filed an "Amended Complaint #3" (Document No. 31) on November 24, 2010. In a "Memorandum And Recommendation" (Document No. 32) issued on December 1, 2010, the undersigned noted that "Plaintiff failed to file a proper motion to amend, but the Court will nonetheless recommend that 'Amended Complaint #3' be accepted as Plaintiff's current and final Complaint in this matter." No objections have been filed to the undersigned's "Memorandum & Recommendation" (Document No. 32), and the time to object has lapsed.

Plaintiff's "Amended Complaint #3" ("Complaint") was filed pursuant to 42 U.S.C. §§ 1983 and 1985. (Document No. 1, p.1). Plaintiff alleges that his "constitutional rights, privileges or immunities have been violated." (Document No. 1, p.21). The Complaint specifically asserts that Defendants have violated Plaintiff's rights under the Americans with Disabilities Act ("ADA"). (Document No. 1).

Plaintiff alleges that various actions, and inaction, by Defendants have subjected him to discriminatory treatment as a user of service animals. Plaintiff purportedly uses two sugar gliders as service animals.[1] In presenting the Complaint's factual background, Plaintiff largely relies on an email apparently sent from Joan Esnayra, Ph.D., President and founder of the Psychiatric Service Dog Society, to a contact at DOJ named Jeanine, on Plaintiff's behalf. (Document No. 31, pp.20-21). Regarding Plaintiff's sugar gliders, Dr. Esnayra's email provides the following information:

---

[1] A sugar glider is described by Oxford Dictionaries online as: "a flying phalanger that feeds on wattle gum and eucalyptus sap, native to Australia, New Guinea, and Tasmania . . . a tiny marsupial indigenous to Australia."
See http://english.oxforddictionaries.com/view/entry/m_en_us1295542#m_en_us1295542

> He has two trained sugar gliders that ride inside his shirt pocket at all times.
>
> These are tiny marsupials that look a little bit like a flying squirrel although much smaller. They both fit in the palm of his hand and when they are inside his shirt or shirt pocket no one knows they are there. The animals are trained to function appropriately in places of public accommodation. They are also trained to alert to Mr. Capell's escalating anxiety and incipient panic attacks. The advance alert gives Mr. Capell an opportunity to mitigate the episodes through structured interactions with both animals that may include deep breathing exercises and the employment of cognitive behavioral skills.

(Document No. 31, p.27).

Plaintiff's Complaint offers few specifics as to the nature of his alleged disability. According to the Complaint, Plaintiff "is disabled secondary to a congenital birth defect with his resultant disability being permanent." (Document No. 31, p.30). Elsewhere, the Complaint suggests that Plaintiff's proposed hernia operation is related to his disability, "caused by significant congenital abnormalities." (Document No. 31, p.22). It has not been alleged that Plaintiff's severe anxiety contributes to his disability, nor that his sugar gliders' assistance is at all related to his congenital birth defect(s) – which appears to be the source of his disability. For the purpose of reviewing the motions to dismiss, the Court will accept as true Plaintiff's contention that he is disabled, as that term is legally defined.

At the core of the Plaintiff's dispute with all the Defendants is his apparent denial of access to Carolinas Medical Center ("CMC") with his alleged service animals. Plaintiff sought surgical treatment at CMC and was informed that his sugar gliders would not be allowed to stay with him during his anticipated post-operative inpatient care of one to two weeks. (Document No. 31, p.26). Purportedly, Plaintiff was informed by Dr. Heniford at CMC, on or about May 20, 2009, that he would not be allowed access to CMC with his service animals. (Document No. 31, p.24). On or

3

about August 4, 2009, an attorney hired by Plaintiff sent a letter to Defendant Cindy Bobay at CMC demanding that CMC confirm that Plaintiff was clear to schedule his surgery and that access for his service animals was allowed, or face legal action. Id. Counsel for CMC responded on September 3, 2009, stating in part that CMC "has not denied access to Mr. Capell to undergo the hernia operation, but rather will not allow his sugar gliders to accompany him during his hospitalization out of concern for the health and safety of Mr. Capell in addition to the health and safety of other hospital patients." (Document No. 31, p.26).

Plaintiff filed the instant lawsuit in August 2010 (Document No. 1) and seems to seek a variety of relief from the named Defendants; including compensatory and punitive damages, as well as specific performance and injunctive relief. (Document No. 31, pp.34-34).

The pending motions to dismiss were filed on January 4 and 12, 2011. (Document Nos. 41-43). Plaintiff filed responses on February 9, 2011. (Document Nos. 47-49). On February 21, 2011, Defendant City Of Charlotte, Charlotte-Mecklenburg Police Department filed its "...Notice of Intent Not To File A Reply Brief" (Document No. 53). The other Defendants have not filed reply briefs, or notices of an intent not to file a reply brief, and the time to do so has lapsed.[2]

Defendants' pending motions each seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6), among other grounds. Immediate review of the pending motions, and a recommendation for disposition to the presiding district judge, the Honorable Robert J. Conrad, Jr., is now appropriate.

---

[2] "The filing of a reply brief is not mandatory. . . . If the party making the motion does not wish to file a reply brief, it must so inform the Court and opposing counsel promptly in an electronically filed notice." Local Rule 7.1(E).

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570;  see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

5

> [T]he Supreme Court has repeatedly held that in the context of a motion to dismiss, a district court must construe a *pro se* complaint liberally. Such a complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." . . . Dismissal of a *pro se* complaint such as [Plaintiff's] for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears " beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Spencer v. Earley, 278 Fed.Appx. 254, 260 (4th Cir. 2008) (citations omitted).

## III. DISCUSSION

**A. 42 U.S.C. § 1985 Claim**

Plaintiff asserts that jurisdiction in this matter is proper pursuant to 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights. (Document No. 31, p.1); see also, 42 U.S.C. § 1985. "A claim pursuant to § 1985 must be supported 'with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiffs of the equal enjoyment of rights secured by the law to all.'" Traversa v. Ford, 718 F.Supp.2d 639, 645 (D.Md. 2010) (quoting Francis v. Giacomelli, 588 F.3d 186, 196-97 (4th Cir. 2009)). Here, as in Traversa, Plaintiff's "conspiracy claim is conclusory and devoid of any specific factual allegations." Id. In fact, as Defendant CMC points out, the body of the Complaint "makes no mention of § 1985." (Document No. 42-1).

Even liberally construed, it does not appear that the Complaint alleges that any of the parties conspired to violate Plaintiff's civil rights. The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995).

6

The undersigned will respectfully recommend that Plaintiff's claims brought pursuant to § 1985 be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim that is plausible on its face. See Iqbal, 129 S. Ct. at 1960.

**B.  42 U.S.C. § 1983 Claim**

Plaintiff also asserts that jurisdiction in this matter is proper pursuant to 42 U.S.C. § 1983. (Document No. 1, p.1); see also, 42 U.S.C. § 1983.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

42 U.S.C. § 1983.

"The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S 137, 140 (1979); see also, Graham v. Connor, 490 U.S. 386, 394 (1989). In this instance, Plaintiff has not alleged a constitutional deprivation, but instead alleges that his rights under the ADA have been violated. (Document No. 31).

According to Defendants, the federal courts have consistently held that plaintiffs cannot bring suit under § 1983 for alleged violations of the ADA. (Document No. 42-1, p.4; Document No. 44, p.11) (citing Vinson v. Thomas, 288 F.3d 1145, 1155 (9th Cir. 2002)("Section 1983 does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal law."); Lollar v. Baker, 196 F.3d 603, 609-10 (5th Cir.

1999)("As a general rule of statutory construction, a statute that affords a remedy for specific wrongs, and which is comprehensive enough to embrace subjects that may fall within the ambit of a general statute, should prevail over the general statute as a vehicle for enforcing those specific statutory rights"); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010-12 (8th Cir. 1999)("the ADA's comprehensive remedial scheme bars [Plaintiff's] section 1983 claims"); Alston v. District of Columbia, 561 F.Supp.2d 29, 45-46 (D.D.C. 2008)).

The City of Charlotte, Charlotte-Mecklenburg Police Department ("CMPD") Defendants argue that the Fourth Circuit adopted the prohibition barring a plaintiff from bypassing a specific comprehensive scheme set forth in a federal statute in Zombro v. Baltimore City Police Dep't, 868 F.2d 1364 (4th Cir. 1989). (Document No. 41-1, p.4). In Zombro, the Fourth Circuit held that a plaintiff could not bring a § 1983 claim alleging an age discrimination claim under the Age Discrimination in Employment Act ("ADEA") because to do so would allow a litigant to "bypass any remedy Congress may provide and come directly into federal court." Zombro, 868 F.Supp.2d at 1367 n.2.

This Court has previously held that a plaintiff could not sue under § 1983 for alleged violations of the Individuals with Disabilities Act ("IDEA"). (Document No. 42-1, p.4)(citing Charlotte-Mecklenburg Bd. Of Educ. v. H.B., 3:07cv189-MR, 2008 WL 4394191 (W.D.N.C. Sept. 24, 2008)). Consistent with other federal caselaw cited by Defendants, this Court has noted that "Section 1983 is for the vindication of constitutional rights, not statutory rights." Charlotte-Mecklenburg Bd. Of Educ., 2008 WL 4394191 at *9 (citing Sellers, 141 F.3d at 532).

> IDEA provides for the registration of a complaint followed by investigation, mediation, a due process hearing, and finally, the right to bring suit in federal court. "[T]hese provisions of the IDEA create an express, private means of redress. **This, then, means that a § 1983 action is not available to remedy violations of IDEA-created**

8

> **rights**[.]" "Congress [did not] intend[ ] the remedies in the IDEA to complement, rather than supplant, § 1983." "[T]he IDEA provides a comprehensive remedial scheme." The Supreme Court has repeatedly referred to the statute as an example of a statutory enforcement scheme that precludes a § 1983 remedy.

Id. (citations omitted)(emphasis added).

Although there does not appear to be a bright line decision from the Fourth Circuit specifically addressing a § 1983 claim alleging discrimination based on disability, Defendants in this case suggest that the analysis above regarding ADEA and IDEA claims, as well as ADA claims in other circuits, is applicable here, and therefore, that Plaintiff's action is improperly brought under § 1983. (Document No. 41-1, p.5; Document No. 44, pp.11-12; Document No. 42-1, pp.4-5).

Based on the foregoing, the undersigned will respectfully recommend that Plaintiff's claims brought pursuant to § 1983 be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim that is plausible on its face.

**C. ADA Claim and State Law Claims**

Defendants further argue that to the extent Plaintiff's Complaint may be liberally construed as being brought under provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*. ("ADA"), and section 504 of the Rehabilitation Act, 29 U.S.C. § 794, it still fails to state a claim upon which relief may be granted. (Document No. 44, p.13; Document No. 42-1, p.6). The undersigned will therefore also review Plaintiff's Complaint as being brought pursuant to the ADA.

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" Waller ex rel. Estate of Hunt v. Danville, VA., 556 F.3d 171, 174 (4th Cir. 2009)(citing 42 U.S.C.

§ 12132). "The purpose of the Act is to 'eliminate discrimination on the basis of disability and ensure evenhanded treatment between the disabled and the able-bodied.'" Tyner v. Brunswick County, 2011 WL 808793 at *4 (E.D.N.C. March 2, 2011)(quoting Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.1998)).

> This court has repeatedly held that "[t]he ADA and Rehabilitation Act generally are construed to impose the same requirements," and "[b]ecause the language of the Acts is substantially the same, we apply the same analysis to both." Baird, 192 F.3d at 468 (quoting Doe v. University of Maryland Medical System Corp., 50 F.3d 1261, 1264 n.9 (4th Cir.1995)). Thus, although the two statutes have minor differences, in general, a plaintiff seeking recovery under "either statute" **must allege that (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was "excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability**." Constantine, 411 F.3d at 498.

Spencer v. Earley, 278 Fed.Appx. 254, 261 (4th Cir. 2008)(emphasis added).

"A plaintiff is 'qualified' if [he] is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" Constantine v. George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005) (quoting 42 U.S.C. § 12131(2)). "Under the disability discrimination statutes, a plaintiff must show that [he] was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination **by that entity**." Constantine, 411 F.3d at 499 (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)) (emphasis added).

> States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public

10

> entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden."

Miller v. Hinton, 288 Fed.Appx. 901, 902 (4th Cir. 2008).

Plaintiff's Complaint makes numerous allegations of violations of the ADA by most, if not all, Defendants. The undersigned will briefly examine Plaintiff's contentions regarding each Defendant and determine whether, viewed in the most favorable light, he has stated a plausible claim upon which relief may be granted. To the extent Plaintiff appears to have alleged state law violations against some Defendants, the undersigned will also address those claims.

**1. City of Charlotte, Charlotte-Mecklenburg Police Department**

Plaintiff contends that CMPD violated his rights by several employees making inquiries that purportedly violate the ADA. (Document No. 31, p.13). One example Plaintiff offers is that CMPD employees inquired as to whether he had "the NC State Service Animal Tag as required under NC State Law." Id. Plaintiff alleges that he wanted to file a police report against all Defendants named in this lawsuit for violation NC State Law 14-163.1, but that CMPD refused because he did not have a NC State Service Animal Tag. Id. North Carolina General Statute ("N.C.G.S.") § 14-163.1 addresses assault on a law enforcement, assistance, or search and rescue animal. Plaintiff further contends that CMPD employee inquiries violated CMPD's own Service Animal Policy. Id. Plaintiff concludes that CMPD's refusal to act caused him considerable delay in getting clearance for his surgery. Id.

The undersigned does not find that Plaintiff's Complaint, even liberally construed, states a plausible claim for violation of the ADA by CMPD because its employees refused to take a police report or made allegedly improper inquiries regarding whether Plaintiff's animals had a NC State Service Animal Tag. Assuming Plaintiff met the first two elements of an ADA claim: (1) alleging

11

he had a disability; and (2) that he was otherwise qualified to receive the benefits of a service...; there is still no plausible allegation that he was discriminated against *on the basis of his disability*. See Waller, 556 F.3d at 174 and 42 U.S.C. § 12132. Plaintiff's own allegations describe CMPD's refusal to file a report as being based entirely on whether or not his animals had tags, not that he was discriminated against because he is disabled. (Document No. 31, p.13)("When I told them I did not have the NC State Service Animal Tag they refused to help me and refused to take a report").

Based on the foregoing, Plaintiff has failed to plead sufficient factual content to allow the Court to draw a reasonable inference that CMPD has violated Plaintiff's rights under the ADA. As such, the undersigned will recommend that Plaintiff's claim against CMPD for a violation of the ADA be dismissed.

### 2. NC Department of Health and Human Services

Plaintiff seems to allege that the employees of the NC Department of Health and Human Services ("NCDHHS") are violating the ADA because N.C.G.S 168-4.3 has "added an additional Training Requirement" and/or because the online application form for service animal registration "makes inquiries that also violates the ADA." (Document No. 31, p.2). The Complaint does not allege that Plaintiff was discriminated against by this Defendant, on the basis of his disability.

Defendant suggests that the only apparent reason Plaintiff was not provided a service animal registration is that he is not a North Carolina resident, and that a denial based on citizenship "is not a denial based on disability and is therefore not an ADA claim.". (Document No. 44, pp.13-14). Defendant also asserts that [t]here is nothing in North Carolina law that makes service animal registration mandatory." (Document No. 44, p.16).

Based on the foregoing, the undersigned will recommend that claims against this Defendant be dismissed.

### 3. NC Division of Vocational Rehabilitation

Plaintiff simply alleges that the NC Division of Vocational Rehabilitation ("NCDVR") "employees are violating the ADA." (Document No. 31, p.7). Plaintiff fails to provide any factual content that would allow the Court to draw the reasonable inference that this Defendant is liable for the misconduct alleged. Even viewed in the most favorable light, Plaintiff has failed to allege a plausible claim that his rights under the ADA, or any other statute, have been violated by this Defendant. Claims against this Defendant should also be dismissed.

### 4. NC DOJ

NC DOJ (presumably the North Carolina Department of Justice) is also a named defendant in this matter. (Document No. 31). Plaintiff alleges that NC DOJ is "defending State Employees involved in this case," and that they have "refused to help me and some of their employees have made inquiries they are not allowed to make under the ADA . . . there seems to be a problem here too that needs to be addressed, just like the rest." (Document No. 31, pp.18-19). The Complaint again fails to state sufficient factual content to allow the Court to draw the reasonable inference that this Defendant is liable for the misconduct alleged, including any discrimination under the ADA.

Defendants contend that Plaintiff's action against this Defendant is also defective because NC DOJ has never been properly served with a copy of the Complaint. (Document No. 44, p.2).

The undersigned will recommend that claims against this Defendant also be dismissed.

### 5. M. Terry Hodges

Plaintiff specifically alleges that Defendant M. Terry Hodges ("Hodges") "in his official capacity [] refused a reasonable accommodation request for the NC State Service Animal Tag required under NC State Law 168-4.3." (Document No. 31, p.2). The Complaint also contends that Hodges gave Plaintiff advice that was unethical because it violated his ADA rights. Id. Here again,

Plaintiff has failed to state any factual content to support his claim. It is therefore unclear, *inter alia*, what accommodation Plaintiff requested, the grounds for denial, or what authority Hodges as a compliance attorney had to grant or deny a request from Plaintiff.

As with the other Defendants, Plaintiff has not alleged that any misconduct by this Defendant was based on Plaintiff's purported disability. Moreover, Plaintiff has not alleged that he was otherwise qualified to receive the benefit he sought. If Plaintiff is alleging that he was improperly denied a service animal tag, he has not claimed that he was qualified for such a tag. In fact, Defendants note that the only suggestion for why Plaintiff may have been denied a North Carolina service animal tag or registration, was because he is not a North Carolina resident. (Document No. 44, p.13). The Complaint itself notes that Plaintiff was informed that the tags are intended for North Carolina residents. (Document No. 31, p.4). The Complaint also shows that Plaintiff resides in Columbia, South Carolina. (Document No. 31, p.1).

Among other defenses, Defendants contend that the Eleventh Amendment bars all State claims against individual defendants in their official capacities. (Document No. 44, p.9)(citing Pennhurst Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984).

Based on the foregoing, the undersigned will recommend that the claims against Defendant Hodges be dismissed.

### 6. Pamela Lloyde-Ogoke

Plaintiff's only allegation against Defendant Lloyde-Ogoke seems to be that she confirmed Plaintiff's "conversation with Mr. M. Terry Hodges Esq. in her official capacity using her State Government Email Account...." (Document No. 31, p.7). As such, the Complaint against this Defendant is without merit and should be dismissed.

### 7. Kathy J. Thomas

14

It is difficult to discern what, if any, claim Plaintiff asserts against Kathy J. Thomas ("Thomas"). He seems to contend that Defendant Thomas, along with other Defendants, has caused him delay in his medical care. (Document No. 31, p.19). However, Plaintiff has offered no factual support to such a claim, or described a recognized cause of action based on such an allegation.

Plaintiff also appears to seek enforcement of N.C.G.S. § 14-163.1; however, Plaintiff has provided no factual content to support a claim under that statute. Id. N.C.G.S. § 14-163.1 involves assault or harm to a law enforcement agency animal, assistance animal, or search and rescue animal. The undersigned finds no alleged factual content to support a claim that any of the Defendants have physically harmed any service animals.

Plaintiff's Complaint as to this Defendant is devoid of sufficient factual content to support any claims and should be dismissed pursuant to Rule 12(b)(6). It also appears that there was never proper service of process on Defendant Thomas. (Document No. 44, p.17).

### 8. Roy Cooper

Plaintiff has named Roy Cooper ("Cooper") as a Defendant, but has alleged no wrongdoing by Defendant Cooper in either his official or individual capacity. (Document No. 31, pp.1, 19-20). To the extent Plaintiff intended to allege that Defendant Cooper has violated Plaintiff's rights pursuant to the ADA, the Complaint fails to state a plausible claim for such misconduct and should be dismissed. It also appears likely that Defendant Cooper has never been properly served in this lawsuit, and moreover, has immunity under the Eleventh Amendment as to most, if not all claims, Plaintiff attempts to allege.

### 9. Carolinas Medical Center

The crux of Plaintiff's lawsuit is his allegation that Defendant CMC has violated the ADA by "categorically denying access to my Service Animals in my in-patient hospital room during my

15

recovery period in their Hospital." (Document No. 31, p.8). The Complaint does not contend that CMC has to date actually denied Plaintiff access to its hospital on any particular occasion; rather, the Complaint shows that Plaintiff was advised by his prospective surgeon in or about May 2009, that if he chose to have an operation at CMC, his animals would not be allowed accompany him. (Document No. 31, p.11). On or about September 3, 2009, Defendant CMC's counsel included the following statement in a letter to Plaintiff's counsel, which Plaintiff has incorporated into his Complaint:

> To be clear, Carolinas Medical Center has not denied access for Mr. Capell to undergo the hernia operation, but rather will not allow his sugar gliders to accompany him during his hospitalization out of concern for the health and safety of Mr. Capell in addition to the health and safety of other hospital patients.

(Document No. 31, p.26). Another section of the Complaint includes a different, but consistent message from CMC's counsel:

> the primary issue from Dr. Heniford's perspective is that of post-surgical infection. Irrespective of whether or not the ADA applies, I do not believe the doctor will allow Mr. Capell to have any sort of animal crawling on his chest while he recovers from surgery. The hospital, of course, agrees with Dr. Heniford, and is also concerned about the general risk of infection from any animal.

(Document No. 31, p.10).

Plaintiff alleges that Defendant CMC's action, "refusing access to my Service Animals in my in patient hospital room  . . .. clearly violates the ADA." (Document No. 31, p.8). As with his allegations against the other Defendants, Plaintiff has not asserted that he was discriminated against on the basis of his disability. To the contrary, in at least two instances noted above, the Complaint itself explicitly provides Defendant's non-discriminatory rationale for denying Plaintiff's animals access to Plaintiff's in-patient recovery room.

16

In support of its position, Defendant CMC cites relevant caselaw, including Smith v. Moorman, 47 Fed.Appx. 755 (6th Cir. 2002). In Smith v. Moorman, the Sixth Circuit first noted that in a claim under Title II or Title III of the ADA a disabled individual must demonstrate that he was excluded from a public benefit, service, or program *because of his disability*. Smith, 47 Fed.Appx. at 756 (emphasis added). The Sixth Circuit then affirmed the district court in concluding that the defendant medical facility did not violate the ADA because "Smith's disability played no part in the decision to prohibit Smith's dog from staying with him during his hospitalization." Id. at 757. Defendant also cites Rose v. Springfield-Greene County Health Dept., 668 F.Supp.2d 1206, 1212 (W.D.Mo. 2009) for the same ADA standard applied by Smith, and by this Court in this case. In Rose, the district court determined that Defendants had not violated the ADA by denying Plaintiff access to certain establishments with her purported service animal, at least in part because

> While the ADA is designed to allow disabled individuals to have meaningful access to the world through the use of service animals, "it does not compel hospitals to jeopardize the health and safety of their patients." Pool, 1995 WL 519129, at *5 (finding hospital did not violate ADA by denying disabled individual accompanied by service dog access to private areas of hospital).

Id. at 1217.

Unlike Rose, which included a dispute as to whether a monkey was a service animal, to date this case has not involved a dispute as to whether or not Plaintiff's sugar gliders are service animals. At this stage, Defendants have focused on the argument that Plaintiff was not excluded from a public benefit, service, or program *because of his disability*, and has therefore failed to state a claim. However, Plaintiff's request for relief does seem to seek various forms of specific performance, injunctive, and/or declaratory relief that may involve recognizing sugar gliders as service animals.

On this issue, the undersigned respectfully notes that pursuant to action by the United States

17

Attorney General signing revised ADA regulations, that were published in the Federal Register on September 15, 2010, and became effective on March 15, 2011, the definition of a "service animal" has been narrowed. See www.ada/gov/regs2010/ADAregs2010.htm. The revisions specifically include a change in the definition of "service animal" under 28 C.F.R. §§ 35.104 and 36.104. See 2010 WL 3561890 at *56250. The new definition provides that

> Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the handler's disability.

28 C.F.R. §§ 35.104 and 36.104.

Based on the foregoing, the undersigned will recommend that Plaintiff's claims against CMC, even liberally construed, fail to state a plausible claim for relief.

**10. Cindy Bobay**

Finally, Plaintiff alleges that Defendant Bobay "called me on the phone to advise me as a Hospital Official that the Hospital would not allow me to have my Service Animals in my room post surgery." (Document No. 31, p.8). Plaintiff contends that this action by Defendant Bobay "clearly violates the ADA." Id.

The undersigned finds Plaintiff's charge against this Defendant to be conclusory and without merit. Plaintiff again fails to allege any factual content that would allow this Court to draw a reasonable inference that Defendant Bobay is liable for a violation of the ADA. In addition, Defendant Bobay contends that Title II of the ADA only applies to public entities, not individuals like this Defendant. (Document No. 42-1, p.6) (citing 42 U.S.C. §§ 12132 and 12131(1)) and Green

18

v. City of New York, 465 F.3d 65,76 (2nd Cir. 2006) (affirming dismissal of ADA claims against individual because he was not public entity).

The undersigned will recommend that the motion to dismiss also be granted as to this Defendant.

## IV.  CONCLUSION

On its face, Plaintiff's Complaint appears to have been improperly filed pursuant to 42 U.S.C. §§ 1983 and 1985. To the extent Plaintiff's Complaint may be construed as alleging discriminatory practices under the ADA, or pursuant to state laws, his Complaint fails. In short, Plaintiff has not alleged sufficient factual content to support his ADA or state law claims against Defendants. Specifically concerning any allegations under the ADA, Plaintiff has not alleged that any Defendants excluded Plaintiff from a public benefit, service, or program *because of his disability*.

Although Plaintiff filed timely responses to the pending motions to dismiss, those responses have not effectively addressed the sound authority Defendants' motions rely on. The undersigned is not without sympathy for Plaintiff, who is apparently in serious need of medical treatment, but faces what for him seems to be a very difficult decision regarding a separation from his animals. The undersigned, however, is not persuaded that Plaintiff has adequately presented claims upon which relief may be granted by the federal courts.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant City Of Charlotte, Charlotte-Mecklenburg Police Department's Motion To Dismiss" (Document No. 41) be **GRANTED**; Defendants Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Medical Center "Motion To Dismiss" (Document No. 42) be **GRANTED**; and the

19

"Motion To Dismiss As To NC Department Of Health And Human Services, M. Terry Hodges, NC Division Of Vocational Rehabilitation, Pamela Lloyde-Ogoke, NC DOJ, Kathy J. Thomas, And Roy Cooper" (Document No. 43) be **GRANTED**.

## VI.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to the *pro se* Plaintiff, counsel for Defendants, and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: March 31, 2011

David C. Keesler
United States Magistrate Judge